Board of School Directors of Fox Chapel Area School District, Petitioner v. Cheryl Y. Rossetti, Respondent.

106

Argued February 28, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt and DiSalle.

*Hayes C. Stover*, with him *Janice H. Anderson*, and *Kirkpatrick, Lockhart, Johnson & Hutchison*, for petitioner.

*Daniel R. Delaney*, Special Counsel, with him *Ronald N. Watzman*, Regional Counsel, for respondent.

*Michael I. Levin*, with him *William Fearen*, and *Cleckner & Fearen*, for amicus curiae, Pennsylvania School Boards Association.

OPINION BY JUDGE DiSALLE, June 13, 1978:

This is an appeal from a decision of the Secretary of Education (Secretary) who ordered that the respondent, Cheryl Y. Rossetti, be reinstated to her teaching position with the Fox Chapel Area School District (District). The petitioner, the Board of School Directors of the District (Board), had dismissed the respondent upon her failure to return to her teaching job following the expiration of her maternity leave.

On July 17, 1975, respondent requested in writing that she be granted a maternity leave of absence effective on the first in-service day in August. The requested leave was granted. The collective bargaining agreement between the District and the Fox Chapel Educators Association provided that a teacher on maternity leave could remain off work following termination of the pregnancy for an initial period of up to eight weeks. Thereafter she could extend her leave at 30 day intervals so long as she provided the

District with a physician's certificate that the extension was needed for her recovery.

Respondent was due to return to work in the middle of December, a son having been born to her on October 18, 1975. Respondent, however, furnished the elementary school's supervisor with a letter from her obstetrician, dated December 10, 1975, indicating that a four week extension of the maternity leave was necessary. This extension was granted, and respondent was scheduled to return to work on January 13, 1976. On January 5, 1976, respondent sent a letter to the District's Superintendent, which stated that although her obstetrician was of the opinion that she had recovered from childbirth and that a further extension of her maternity leave was unnecessary, she nevertheless desired a leave of absence for the remainder of the school year, because it was necessary that she breastfeed her child.

By letter dated January 8, 1976, the Superintendent informed respondent that there were no provisions in the collective bargaining agreement either for an extension of maternity leave beyond that already given to her, or for a child rearing leave. The respondent then appeared at the January 12, 1976 school board meeting accompanied by a representative of the Pennsylvania State Education Association. He requested that the Board grant the respondent a discretionary leave, as opposed to a maternity leave, and explained that his request was based on an allergy condition suffered by the respondent, and on the special care needs of the child. The Board, by a six to one vote, with one abstention, denied the requested leave. The Superintendent thereupon told respondent to report to work the next day, and followed the verbal request with a written order to that effect.

Respondent did not return to work, but instead wrote a letter to the Superintendent on January 17,

1976, wherein she explained that she was breastfeeding her baby as a preventative measure against his developing allergies. She further stated that it was impossible for her to comply with the Board's directive that she return to work at that time. Similarly, her union representative wrote a letter to the Board reiterating the respondent's need in this regard.

These letters were to no avail, for on January 29, 1976, a special meeting of the Board was held and the Superintendent was authorized to draw up a list of charges against respondent. This was done, and on February 19, 1976, respondent was charged with persistent negligence, persistent and wilful violation of the school laws of the Commonwealth, and incompetency.[1] Hearings were held on these charges on March 4 and May 11, 1976. The testimony produced at those hearings may be summarized as follows: Respondent suffers from an allergic condition for which she is required to have weekly injections. According to the testimony of her son's pediatrician, breastfeeding helps to prevent, or at least postpone, the development of allergies in the children of individuals with a history of allergy problems. As a result, respondent decided to breastfeed her son, and did in fact do so. Sometime after respondent and her son were discharged from the hospital, the child began to refuse bottles containing milk which his mother had ex-

---

[1] Section 1122 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §11-1122, pertinently states in part:

The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality, incompetency, intemperance, cruelty, persistent negligence, mental derangement, advocation of or participating in un-American or subversive doctrines, persistent or wilful violation of the school laws of this Commonwealth on the part of the professional employe. . . .

pressed, and eventually refused to take a bottle at all. As a result, unless the child was to be fed intravenously or by a stomach tube, his sole means of nourishment was breastfeeding. It was on the basis of this testimony that respondent sought a further leave of absence from the school district, claiming that the need to breastfeed her son, who was fed on a demand basis five to seven times daily, prevented her from returning to work.

After the Board rejected respondent's argument, and voted to dismiss her, she appealed, and the Secretary reversed the Board and ordered that she be reinstated.

While "persistent negligence" and "persistent and wilful violation of the school laws" are valid reasons for termination of a professional employe's contract with a school district pursuant to Section 1122 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §11-1122, the respondent's conduct cannot be characterized as rising to this level. She informed the school district of her situation at all times and conscientiously attempted to secure the Board's approval to extend her leave so that she could remain at home to care for her child. Our Superior Court has held that the reasonableness of a teacher's action is a factor to be considered in such cases and that " '[p]ersistent' means continuing or constant, and 'wilful' obviously suggests the presence of intention, and at least some power of choice. . . ." *Sinton's Case,* 151 Pa. Superior Ct. 543, 548, 30 A.2d 628, 630 (1943). It seems clear that the respondent had no *intention* to disobey the Board's order to return to work, but that, under the circumstances, she felt that she had no other choice after the School Board's refusal to extend her leave. Her decision was a reasonable one in that no other person was capable of performing the maternal duties required of her.

Under these circumstances, therefore, her conduct does not represent the kind of "persistent negligence" or "wilful violation" of the school laws sufficient to constitute "cause" for the termination of her professional teaching contract. It is undisputed that respondent was physically and mentally fit to resume her teaching duties. As such, the charge of "incompetency" cannot be supported. *See Cerra v. East Stroudsburg Area School District,* 450 Pa. 207, 299 A.2d 277 (1973).

Notwithstanding the above, the crux of the instant appeal by the Board goes to respondent's argument that to deny her a further leave of absence based on her need to breastfeed her child constitutes pregnancy-based, and therefore sex-based, discrimination in violation of Section 5(a) of the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §955(a).[2] The issue raised by respondent's argument is one of first impression in this Commonwealth. Section 5(a) of the

---

[2] Section 5(a) of the Act provides, *inter alia*:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, . . .

(a) *For any employer because of* the race, color, religious creed, ancestry, age, *sex,* national origin or non-job related handicap or disability of any individual *to refuse to hire or employ, or to bar or to discharge from employment* such individual, or *to* otherwise *discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment,* if the individual is the best able and most competent to perform the services required. The provision of this paragraph shall not apply, to (1) termination of employment because of the terms or conditions of any bona fide retirement or pension plan, (2) operation of the terms or conditions of any bona fide retirement or pension plan which have the effect of a minimum service requirement, (3) operation of the terms or conditions of any bona fide group or employe insurance plan. (Emphasis added.)

Act has been interpreted to proscribe pregnancy based discrimination on the grounds that this constitutes unlawful sex discrimination. In *Anderson v. Upper Bucks County Area Vocational Technical School,* 30 Pa. Commonwealth Ct. 103, 110, 373 A.2d 126, 130 (1977), this Court, by Judge ROGERS, held that "since pregnancy is unique to women, a disability plan which expressly denies benefits for disability arising out of pregnancy is one which discriminates against women employes because of their sex." In that case, we struck down a collective bargaining provision which prohibited a teacher on maternity leave from applying her accumulated sick leave to the time she was absent from her employment on account of her pregnancy. This Court has also invalidated an employment policy whereby a school district required that all pregnant female employes terminate their employment three and one-half months before their estimated due date. *Freeport Area School District v. Pennsylvania Human Relations Commission,* 18 Pa. Commonwealth Ct. 400, 335 A.2d 873 (1975); *see also, Leechburg Area School District v. Pennsylvania Human Relations Commission,* 19 Pa. Commonwealth Ct. 614, 339 A.2d 850 (1975). Finally, our Supreme Court, in *Cerra v. East Stroudsburg Area School District, supra,* struck down a school district regulation which required pregnant teachers to resign at the end of their fifth month of pregnancy. None of these cases suggest that a pregnancy related disability extends beyond a woman's own physical disability to a disability arising out of the special needs of her child. However, since the development of the law in this area has been based upon the unique position of the female confronted with the prospect of childbirth, it follows that the request for additional leave for breastfeeding purposes under the circumstances of this case is merely a logical and natural extension of that con-

cept. Consequently, the refusal of the Board to grant respondent's request for an unpaid leave of absence for the purpose of breastfeeding her child amounted to an unlawful discriminatory practice in violation of Section 5(a) of the Act.[3]

It has been argued that this case involves a request for a leave for childrearing rather than one due to pregnancy or childbirth. The regulations of the Pennsylvania Human Relations Commission, found at 16 Pa. Code §41.103(a), require that disability due to pregnancy and childbirth be treated the same as a temporary disability. The regulations found at 16 Pa. Code §41.104(a), however, provide that "[n]othing in these regulations shall prohibit an employment policy that permits granting of leave for purposes of childrearing beyond the period of actual disability, but such leave shall not include payment of sickness or disability benefits." These regulations indicate a recognition that these two types of leave do exist. We do not believe that the facts of this case involve childrearing. The distinguishing feature here is that only the female can perform the breastfeeding function. This is not a case where the claim is made that because of some psychological or emotional need of the child, the physical presence of a parent is constantly required. We affirm.

## ORDER

AND Now, this 13th day of June, 1978, the decision of the Secretary of Education, Teacher Tenure Appeal No. 300, dated December 27, 1976, is affirmed.

---

[3] In view of this conclusion, it is unnecessary to determine whether the denial of the additional leave requested by respondent was unduly restrictive of her constitutional rights as enumerated in *Cleveland Board of Education v. LaFleur*, 414 U.S. 632 (1974), wherein an exhaustive compilation of United States Supreme Court decisions is presented.

114

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. Cheryl Y. Rossetti, who had admittedly recovered from her pregnancy as of the date of her refusal to return to work, cannot complain that she has been discriminated against as regards her own disability. She asserts, however, that pregnancy-based disability should include any disability arising out of the special needs of her child. I cannot agree.

First, the respondent's decision to breastfeed her son, laudable as it might be, is one for which she, and not the District, must bear the consequences. In so stating, I am not unsympathetic to the respondent's plight. To the contrary, I believe it is quite admirable that respondent sought to do that which she believed to be in the best interests of her child. However, I would hold that the petitioner's refusal to extend respondent's maternity leave so that she could breastfeed her child was not sex discrimination in violation of Section 5(a) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §955(a).

Second, the Pennsylvania Human Relations Commission's own regulations interpreting the Act make a distinction between temporary disability due to pregnancy or childbirth and childrearing leave. The regulations found at 16 Pa. Code §41.103(a), require that disability due to pregnancy and childbirth be treated the same as a temporary disability. The regulations found at 16 Pa. Code §41.104(a), however, provide that "[n]othing in these regulations shall prohibit an employment policy that permits granting of leave for purposes of childrearing beyond the period of actual disability, but such leave shall not include payment of sickness or disability benefits." Clearly these regulations recognize that there is nothing in that Act that requires the inclusion of childrearing

leave with maternity leave. To the contrary, they distinguish between the two types of leave and thereby lend support to my conclusion that the failure to grant respondent's requested leave does not violate the Act.

The Secretary of Education, in his opinion, states:

It is a point that seems frequently to have been lost on the many parties involved in this case, that what has been at issue is not a pregnancy disability leave. What was requested, and that to which Mrs. Rossetti was entitled, was a maternity leave.

This certainly is not what she and her representative at the time of the application stated to the Board. In any event, clearly she has not complied with the requirement for an extension of maternity leave, *i.e.,* a certificate of her physician that it is necessary. The Secretary would hold that "it is a needless, arbitrary and capricious infringement upon the woman's freedom of personal choice for the local school board to require that she receive the certification of her doctor for her to continue to serve a vital maternal function to her newborn child." This is an untenable position, especially when the Secretary relies on the decision of the United States Supreme Court in *Cleveland Board of Education v. LaFleur,* 414 U.S. 632 (1974). In that case, the Court approved a similar requirement of a physician's certificate as being not only reasonable but desirable.

My reading of the majority opinion is that the undergirding premise of its holding today is that, since pregnancy is unique to women, it follows that the request for additional leave for breastfeeding purposes, under the circumstances of this case, is merely a logical and natural extension of that concept. Consequently, the refusal of the School Board to grant respondent's request for an extended leave for the

purpose of breastfeeding her child amounted to an unlawful discriminatory practice.

I simply do not consider the circumstances of this case to be a logical and natural extension of the undeniable concept that pregnancy is unique to women. There being no provisions in the collective bargaining agreement for a childrearing leave and the respondent's temporary disability due to pregnancy or childbirth having ceased, I would reverse the decision of the Secretary of Education in Teacher Tenure Appeal No. 300.

President Judge Bowman and Judge Wilkinson, Jr. join in this dissent.