**Kathleen ZICHY and Jane E. Schofer, Appellants,**

v.

**The CITY OF PHILADELPHIA, Appellee.**

No. 78-1223.

United States Court of Appeals, Third Circuit.

Argued Sept. 29, 1978.

Decided Jan. 5, 1979.

**504**

.Susan Cary Nicholas, Alice M. Price, Philadelphia, Pa., for appellants.

John M. McNally, Jr., Sheldon L. Albert, Philadelphia, Pa., for appellee.

Benjamin G. Lipman, Philadelphia, Pa., for Pennsylvania Human Relations Commission, as amicus curiae.

Before SEITZ, Chief Judge, HUNTER, Circuit Judge, and LACEY,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

In this class action, plaintiffs challenge the City of Philadelphia's policy on pregnancy-related leave for city employees. On appeal, plaintiffs request that we reverse the district court's denial of their motion to amend the Complaint to add a claim based on state law. Plaintiffs also ask that we narrow a prior decision of this court which dismissed these plaintiffs' Title VII claims. In light of the Supreme Court's recent decision in *Nashville Gas Co. v. Satty,* 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977), we will remand to the district court for reconsideration of the Title VII claims and, therefore, the motion to amend the Complaint.

### I.

Plaintiff class consists of female employees of the City of Philadelphia affected by the City's pregnancy-related, or maternity, leave policy.[1] The action was first brought under the equal protection and due process clauses of the Constitution and under the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1976). Later, plaintiffs amended the Complaint to add Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (1976), as additional support.[2] They con-

---

* Honorable Frederick B. Lacey, United States District Judge for the District of New Jersey, sitting by designation.

1. On May 21, 1973 the district court certified the class as comprising:

 "all female persons currently and formerly employed by the City of Philadelphia from September 14, 1966, who, during the course of their employment, have been, are being, or will be caused to take nonpaying maternity leave rather than being permitted to use accumulated sick leave for temporary disabilities caused or contributed to by pregnancy, childbirth, and the recovery therefrom, and those female employees who were caused to resign and accept positions with loss of se-

niority and benefits upon returning to work after recovering from said disability."
 *Zichy v. City of Philadelphia,* 392 F.Supp. 338, 340 (E.D. Pa. 1975) (quoting earlier order of certification).

2. Congress amended Title VII on March 24, 1972 to allow actions against "governments, governmental agencies, [and] political subdivisions." The district court determined that the class would not be entitled to relief against the City under Title VII for violations which occurred prior to that date. *Zichy v. City of Philadelphia,* 407 F.Supp. 841 (E.D. Pa. 1975). The plaintiffs have not raised any challenge in this appeal to the district court's determination of the class of plaintiffs which is entitled to relief.

tended that the City's policy discriminated against female employees because women on maternity leave were treated differently in the compensation, terms, and conditions of their employment from employees on ordinary sick leave. Further, they contended that treating women on maternity leave differently from employees on sick leave created a classification which adversely affected the status of female employees because of sex.

Sick leave and maternity leave are governed by section 21 of the Philadelphia Civil Service Regulations. Employees on sick leave continue to earn their normal salary and accrue seniority. They do not lose the opportunity to take promotional examinations, have the time out credited for service, and receive the same raises as other employees in the same classification who were not out on sick leave. Seniority continues to accumulate; the same job position remains open to employees when they return from sick leave; and fringe benefits are not affected. The woman on maternity leave, however, receives no pay during the period of absence. She accumulates neither seniority, sick leave, nor vacation time. Her anniversary date is deferred, and she is subject to a lower rate of pay for pension purposes. *Zichy v. City of Philadelphia*, 392 F.Supp. 338, 340–42 (E.D. Pa. 1975). *See also* Defendant's Answers to Plaintiffs' Interrogatories at ¶¶ 1, 2, 28, 63, & 72.

Finding no factual dispute over the provisions of the City's pregnancy-related leave policy, on March 19, 1975 the district court entered summary judgment in favor of the plaintiff class. The district court concluded "that defendant's policy of denying the use of sick leave for maternity-related disabilities violates Title VII's prohibition against sexual discrimination in employment." 392 F.Supp. at 347.

While the City's appeal was under consideration in this court, the Supreme Court decided *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). There, the Court held that an employer's disability plan which did not cover pregnancy-related disabilities was not a per se viola-

tion of Title VII. After *Gilbert*, we held in *EEOC v. Children's Hospital of Pittsburgh*, 556 F.2d 222 (3d Cir. 1977), *cert. denied*, 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978), that an employer's policy of prohibiting female employees from using accumulated sick leave for pregnancy-related disabilities did not violate Title VII. On the basis of *Gilbert* and *Children's Hospital*, this court reversed the district court's award of summary judgment for these plaintiffs, effectively dismissing all of their Title VII claims. We remanded "for the sole purpose of affording appellees an opportunity of presenting a proposed amendment to the complaint" to add a state law claim based on the Pennsylvania Human Relations Act, Pa. Stat. Ann. tit. 43, § 955 (Purdon 1964 & Supp. 1978). *Zichy v. City of Philadelphia*, 559 F.2d 1210 (3d Cir. 1977).

On remand, the district court denied the plaintiffs' motion to amend the complaint to add a state law claim. While assuming that it had the power under the doctrine of pendent jurisdiction to permit the amendment, the court declined to exercise its discretion to do so. 444 F.Supp. 344 (E.D. Pa. 1977).

## II.

Plaintiffs contend that the June 28, 1977, opinion of this court which reversed the award of summary judgment to the plaintiffs was overly broad. They claim that they had made numerous allegations of discrimination based on Title VII which were not affected by *Gilbert*. In the Amended Complaint, which has not been changed since the prior appeal, plaintiffs state that the City's maternity leave policy:

a) discriminate[s] against plaintiff and other female persons in this class because of sex with respect to compensation, terms, conditions and privileges of employment, and b) limit[s], segregate[s] and classifi[es] employees of Defendant in ways which deprive Plaintiffs and other female persons in this class of equal employment opportunities and otherwise adversely affect their status as employees because of sex.

Complaint at ¶ 2. These two allegations essentially track the language of sections 703(a)(1) and (2) of Title VII.[3] Further, plaintiffs contend that the City's policy "regarding Maternity leave . . . arbitrarily distinguishes such leave from all types of Leaves of Absence Without Pay" and causes "female employees to lose seniority and benefits upon returning to work from an absence due to a temporary disability." Complaint at ¶ 26(d) and (e). Plaintiffs focus on two aspects of the City's pregnancy-related leave policy. First, they challenge the City's refusal to allow the use of accumulated sick leave for maternity leave. Second, they assert that the City's policy imposes impermissible burdens on female employees, essentially by refusing to allow their time on maternity leave to count toward benefits.

Plaintiffs first complain that the City's policy of denying the use of accumulated sick leave to employees on maternity leave violates Title VII. In December, 1976 the Supreme Court held in *Gilbert* that the exclusion of pregnancy from the range of disabilities covered by an employer's disability plan is not a per se violation of Title VII. The Court analyzed the plan under section 703(a)(1), which prohibits discrimination on the basis of sex "with respect to . . . compensation, terms, conditions, or privileges of employment." The record disclosed that, even excluding pregnancy-related disabilities, the plan cost the employer at least as much per female employee as per male employee. In finding no discrimination in compensation, the Court held that the plan was facially neutral: "As there is no proof that the package is in fact worth more to men than to women, it is impossible to find any gender-based discriminatory effect in this scheme simply because women disabled as a result of preg-

nancy do not receive benefits." 429 U.S. at 138, 97 S.Ct. at 409. Because there was no showing that the exclusion of pregnancy from the plan was a "pretext designed to effect an invidious discrimination against the members of one sex or the other," *id.* at 136, 97 S.Ct. at 408, *quoting Geduldig v. Aiello,* 417 U.S. 484, 496–97 n. 20, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), nor a showing of discriminatory effect, the Court found no Title VII violation under section 703(a)(1).

In December, 1977 the Supreme Court in *Nashville Gas Co. v. Satty,* 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977), analyzed under section 703(a)(2) disability plans which exclude pregnancy-related disabilities. There, pregnant employees were required to take a formal leave of absence. The employees did not receive sick pay while on maternity leave. Further, employees who took maternity leave also lost all accumulated job seniority. The *Satty* court considered the legality of an employer's refusal to allow employees on maternity leave to use accumulated sick leave. It noted that "it is difficult to perceive how exclusion of pregnancy from a disability insurance plan or sick-leave compensation program" could interfere with individual employment opportunities or adversely affect a woman's status as an employee under section 703(a)(2) since "[t]he direct effect of the exclusion is merely a loss of income for the period the employee is not at work." 434 U.S. at 144–45, 98 S.Ct. at 352. The Court remanded to give the employee the opportunity to demonstrate that the facially neutral plan had a discriminatory intent.

■ The City's disability plan also appears to be facially neutral in this respect, suffering, as in *Gilbert* and *Satty*, only from underinclusiveness. Moreover, "the burden is on the plaintiff to show that the

---

**3.** Section 703(a), 42 U.S.C. § 2000e–2(a) (1976), provides:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individu-

al's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

plan discriminates on the basis of sex in violation of Title VII." 434 U.S. at 144, 98 S.Ct. at 352. We leave it to the district court to determine on remand whether the plaintiffs have made sufficient allegations of discriminatory effect or intent to preserve their right to challenge the denial of the use of sick leave for pregnancy-related disabilities under the standards of *Gilbert* and *Satty*. We must recognize, however, that such a claim would be difficult to prove given the prevailing standards.

Second, plaintiffs contend that other aspects of the City's maternity leave policy impose burdens on female employees which are impermissible under section 703(a)(2). Unlike an employee on sick leave, an employee on maternity leave "accumulates neither seniority, sick leave, nor vacation time, her time required for annual increment and anniversary date is deferred for the period of the maternity leave, and the annual rate of pay for her pension purposes is lowered for that particular year by the period of leave." 392 F.Supp. at 342. Plaintiffs assert that these differences between the City's sick leave and maternity leave policies are the type of burden imposed on the basis of sex which *Satty* does not allow.

In *Satty*, the Supreme Court held that denying women returning from maternity leave seniority accumulated prior to their leaves of absence constituted illegal sex discrimination under section 703(a)(2) of Title VII. Unlike the simple exclusion from a disability plan in *Gilbert*, this deprivation imposes a burden on women which is not facially neutral. In finding a per se violation of section 703(a)(2), the Court noted:

> In *Gilbert* . . . there was no showing that General Electric's policy of compensating for all non-job-related disabilities except pregnancy favored men over women.
>
> . . . . .
>
> Here, by comparison, petitioner has not merely refused to extend to women a

benefit that men cannot and do not receive, but has imposed on women a substantial burden that men need not suffer. The distinction between benefits and burdens is more than one of semantics. We held in *Gilbert* that § 703(a)(1) did not require that greater economic benefits be paid to one sex or the other "because of their differing roles in 'the scheme of human existence,' " . . . But that holding does not allow us to read § 703(a)(2) to permit an employer to burden female employees in such a way as to deprive them of employment opportunities because of their different role.

434 U.S. at 141–42, 98 S.Ct. at 350 (footnote omitted).

■ The City attempts to distinguish *Satty*. It claims that the employees in *Satty* were deprived of all accumulated seniority; here, the employees simply do not accumulate seniority and other benefits while on maternity leave. This circuit rejected that distinction in *Eberts v. Westinghouse Electric Corp.*, 581 F.2d 357 (3d Cir. 1978). Relying on *Gilbert* the district court had dismissed Eberts' complaint for failure to state a claim upon which relief could be granted. In reversing, we pointed out that Eberts' complaint had alleged that Westinghouse denied female employees credited service and seniority for periods during which the women were on maternity leave. *Satty*, we noted, indicates that the *Gilbert* analysis is tied explicitly to the situation of a disability insurance arrangement. We held that the disparities in employment benefits accrued by employees on ordinary sick leave, as opposed to women on maternity leave, "impose substantial burdens on women 'that men need not suffer.' " *Id.* at 361, *quoting Satty*, 434 U.S. at 142, 98 S.Ct. 347. The plaintiffs here invoked in their Amended Complaint the precise language of section 703(a)(2). Their allegations are substantially the same as those held by *Eberts* to state a claim under Title VII.[4]

4. Our conclusion that allegations of sex discrimination of the type made here may state a claim under Title VII is buttressed by regulations of the Equal Employment Opportunity Commission:

> Written and unwritten employment policies and practices involving . . . the accrual of seniority and other benefits and privileges, [and] reinstatement, . . . shall be applied to disability due to pregnan-

The City asserts that in our June 28, 1977, per curiam opinion, we considered the same issue now before us and dismissed the plaintiffs' Title VII claims. Thus, the City argues that even if we decide that our prior reading of *Gilbert* was too broad, we are bound by the "law of the case." That doctrine "expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912). It "does not rigidly bind the appellate court, but is addressed to [the court's] good sense, and the court will depart from its prior legal pronouncements when the circumstances of the case warrant." 1B Moore's Federal Practice ¶ 0.404[10], at 573 (2d ed. 1965). *Greater Boston Television Corp. v. F.C.C.*, 149 U.S.App.D.C. 322, 333, 463 F.2d 268, 279 (1971), *cert. denied*, 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972). *Cf. Zenith Laboratories, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir.), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976) (prior class certification not "law of the case" where change in factual circumstances).

 This court has a duty to apply a supervening rule of law despite its prior decisions to the contrary when the new legal rule is valid and applicable to the issues of the case. *Bradley v. School Board of Richmond*, 416 U.S. 696, 714, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); *Ratay v. Lincoln National Life Insurance Co.*, 405 F.2d 286, 288 (3d Cir. 1968) (in diversity case, federal district court may veer from the "law of the case" set out by the court of appeals when the applicable state law has changed in the interim); *Banco Nacional de Cuba v. Farr*, 383 F.2d 166, 178 (2d Cir. 1967), *cert. denied*, 390 U.S. 956, 88 S.Ct. 1038, 20 L.Ed.2d 1151 (1968). Here, the Supreme Court's decision in *Nashville Gas Co. v. Satty* intervened between the first time the case was before us and this appeal. Therefore, we are not bound by our prior holding. We will remand to the district court for reconsideration of the Title VII claims in light of *Satty* and *Eberts*.

### III.

Finally, plaintiffs allege that the district court erred in denying their motion to amend the Complaint to add a state law claim based on the Pennsylvania Human Relations Act, Pa. Stat. Ann. tit. 43, § 955 (Purdon 1964 & Supp. 1978). The district court doubted whether it had the power under *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), to hear the state law claim. However, the court assumed that it had the power and rested its decision on its discretion under *Gibbs* to refuse to exercise pendent jurisdiction. It did so for two reasons: first, it felt that the policies of pendent jurisdiction would not be fulfilled in the absence of a substantial federal claim to which the state claim could be appended; and second, the district court felt that the state courts had not clearly established that conduct of the type challenged here violated the Pennsylvania Human Relations Act.

 Plaintiffs have contested the determination by the district court that the

---

cy or childbirth on the same terms and conditions as they are applied to other temporary disabilities.

29 C.F.R. § 1604.10(b) (1977). *Satty* specifically stated that these guidelines were entitled to some weight. 434 U.S. at 142 n. 4, 98 S.Ct. 347.

On October 31, 1978 Congress amended Title VII to require, generally, that women affected by pregnancy be treated the same as employees on regular sick-leave. Section 701 was amended to add paragraph (k), which provides in part:

(k) The terms 'because of sex' or 'on the basis of sex' include, but are not limited to,

because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work.

Act of Oct. 31, 1978, Pub. L. No. 95–555, § 1, 47 U.S.L.W. 120 (Dec. 5, 1978) (to be codified in 42 U.S.C. § 2000e).

Pennsylvania case law is unsettled. However, it appears that the absence of a substantial federal claim was the major factor in the district court's decision not to permit plaintiffs to amend their Complaint. Given our decision to remand the federal claims to the district court, plaintiffs may again seek to amend their Complaint to add a claim based on state law.

IV.

At argument, counsel for the plaintiffs informed this court that the City changed its maternity leave policy as of March, 1975. However, even with the policy change, there remains the issue of relief for those employees whose rights under Title VII were violated between March, 1972, and March, 1975. We will remand this case to the district court for consideration of the federal claims raised by the plaintiffs under Title VII. Because there may now be substantial federal claims in the district court, we will reverse the lower court's denial of plaintiff's motion to amend the Complaint to add a claim based on state law and will remand for reconsideration.